**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GRK Holdings, LLC, | No. CV10-0050 PHX DGC |
| Plaintiff, | |
| vs. | **ORDER** |
| First American Title Insurance Co., et al., | |
| Defendants. | |

Defendant First American Title Insurance Co. has filed a motion to dismiss Plaintiff GRK Holdings, LLC's claims against it. Doc. 38. The motion is fully briefed. Docs. 45, 47. Defendants Mariscal, Weeks, McIntyre & Friedlander, P.A. and attorneys Timothy J. Thomason and Charles H. Oldham (collectively "the Mariscal Defendants") have filed a motion to dismiss GRK's claims against them. Doc. 39. The motion is fully briefed. Docs. 46, 48. Defendants Quarles & Brady LLP and attorneys John Maston O'Neal and Lauren Elliott Stine (collectively "the Quarles Defendants") have filed a motion to dismiss GRK's claims against them. Doc. 33. The motion is fully briefed. Docs. 41, 44. No party has requested oral argument. For reasons that follow, the Court will grant in part and deny in part First American's motion to dismiss (Doc. 38), grant in part and deny in part the Mariscal Defendants' motion to dismiss (Doc. 39), and grant the Quarles Defendants' motion to dismiss (Doc. 33).

**I.     Background.**

The facts as pled by the Plaintiff are as follows. On August 28, 2006, GRK lent $270,000 to non-party Shamrock Glen, LLC. Doc. 21 at 3-4. The loan promised a minimum

1   return of $340,000 to be paid in full on October 31, 2006, and was secured by a deed of trust
2   which covered 58 properties. *Id.* at 4.  The deed of trust was recorded by Defendant Capital
3   Title Agency, Inc. *Id.*  First American issued a lender's insurance policy that insured GRK's
4   deed of trust in the amount of $270,000. *Id.*

5       Although the time frame is unclear from the complaint, at some point after the deed
6   of trust was executed Shamrock Glen sold several of the 58 properties to various buyers. *Id.*
7   at 4.  Shamrock Glen made these sales without securing a release of the properties from
8   GRK. *Id.*  All the owners and lenders received title insurance policies from First American
9   or Security Title.[1]  *Id.*  GRK contends that Capital Title acted as the agent for First American
10  and Security Title, and prepared the title reports on the properties that were sold. *Id.*

11      Shamrock Glen defaulted on the loan. *Id.*  In June of 2007, Shamrock Glen attempted
12  to secure additional funds by refinancing with non-party La Jolla Loans. *Id.* at 5.  La Jolla
13  and Shamrock Glen developed a proposed settlement whereby GRK was to receive $300,000
14  in exchange for execution of a full release of the 58 properties secured by the deed of trust.
15  *Id.*  GRK executed a full release of the properties that was subject to a letter which stipulated
16  that the release was to be recorded only upon written instructions from GRK. *Id.* at 5-6.
17  Defendant Security Title Agency was to act as the escrow agent on the proposed settlement,
18  and promised to record the release of the properties only if GRK instructed it to do so. *Id.*
19  at 6.  The proposed settlement was never finalized. *Id.*  As a result, GRK never gave Security
20  Title instructions to record the release. *Id.*

21      After the proposed settlement was abandoned, Shamrock Glen approached GRK with
22  a different proposed agreement that would require GRK to release its interest in 16 of the 58
23  properties that secured the loan.  In exchange, Shamrock Glen would immediately provide

---

[1] It appears that owners Donna Murphy, Sharyn Miller, Mercedes Cruz, Joseph Miller, Gary Morgan, and Cynthia Morgan purchased units in Shamrock Glen and received title insurance from Security Title (collectively "the Security Title insured owners"). Doc. 33-1 at 2-3. Other owners received title insurance from First American (collectively "the First American insured owners").

1 $200,000 to GRK, would transfer title to one of the 58 properties – Unit 208 – to GRK, and
2 would eventually pay the remaining balance due under the loan to GRK. *Id.* at 6. This
3 proposed agreement was finalized, and Security Title recorded GRK's release of the 16
4 properties on July 6, 2007. *Id.* at 7. About one month later, Security Title accidentally
5 recorded GRK's full release of all 58 properties – which had been executed for purposes of
6 the proposed settlement that was never finalized – despite the fact that such recording was
7 not requested or authorized by GRK. *Id.*

8 Although Shamrock Glen paid GRK the $200,000 and transferred title to Unit 208,
9 it failed to pay the remaining balance due under the loan. *Id.* As a result, GRK ordered a
10 trustee's sale guarantee of the 42 unreleased units from its insurer, First American. *Id.* Upon
11 ordering this trustee's sale guarantee, GRK learned that Security Title had erroneously
12 recorded a copy of the full release of all 58 properties. *Id.* Security Title realized its mistake
13 in November of 2007, and recorded affidavits of erroneous recording. Doc. 21-4 at 1.

14 According to its motion to dismiss, First American retained the Mariscal Defendants
15 to represent the owners and clear the clouds on their units arising from liens on the
16 properties, including GRK's. Doc. 38 at 2. The First American insured owners, through the
17 Mariscal Defendants, filed a complaint in Maricopa County Superior Court ("the Superior
18 Court litigation") against GRK and others, seeking to quiet title and enjoin any trustee's sale.
19 *Id.* In the complaint, the owners alleged that GRK's lien was subordinate to the lien held by
20 La Jolla Loans. *Id.* at 2-3.

21 According to the Quarles Defendants' motion to dismiss, Security Title, acting on
22 behalf of its obligations under the title insurance policies issued to the Security Title insured
23 owners, retained the Quarles Defendants to represent the owners and clear the clouds on their
24 units arising from liens on the properties, including GRK's. Doc. 33 at 5. The Security Title
25 insured owners, through the Quarles Defendants, filed a complaint in Maricopa County
26 Superior Court against GRK and others ("the Superior Court litigation"), seeking to quiet
27 title and enjoin any trustee's sale. *Id.* The lawsuits filed by the First American insured
28 owners and the Security Title insured owners were consolidated by the Superior Court.

1   GRK brings the present suit against First American, Security Title, Capital Title, the
2   Mariscal Defendants, and the Quarles Defendants. Doc. 21. GRK claims that all Defendants
3   have abused process by assisting in or causing the filing of the Superior Court litigation
4   (Count I). Doc. 21 at 10. GRK contends that Defendants had an improper purpose for filing
5   the cases in Superior Court, and sought to "harass GRK into abandoning, or releasing for
6   trivial compensation, GRK's liens against the property rather than incurring huge legal fees
7   and expenses." *Id.* GRK further contends that all Defendants have tortiously interfered with
8   GRK's contractual relationship with Shamrock Glen by "failing to recognize GRK's lien
9   when subsequently issuing clear title insurance" and/or by filing or assisting in filing the
10  litigation on behalf of the First American and Security Title insured owners (Count IV).

11  GRK also claims that First American, as the issuer and underwriter of GRK's lender's
12  insurance policy on the deed of trust to the 58 properties, owed it a duty of good faith that
13  was breached (Count II). *Id.* at 12. GRK contends that First American has required it to "go
14  through needless adversarial hoops to achieve its rights under" the lender's insurance policy
15  and that it breached its duty by acting in concert with the First American insured owners in
16  filing the Superior Court litigation. *Id.* at 12-14. GRK further claims that First American
17  breached the lender's insurance policy by failing to disclose to Capital Title (the company
18  that prepared the title reports on all the properties sold to the First American insured owners)
19  that GRK had a valid deed of trust on those properties (Count III). Doc. 21 at 15.

20  GRK has brought two claims against Security Title – a claim for promissory estoppel
21  (Count V) and breach of contract (Count VI).

22  **II.    Legal Standard.**

23  When analyzing a complaint for failure to state a claim under Rule 12(b)(6), the
24  factual allegations "'are taken as true and construed in the light most favorable to the
25  nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation
26  omitted). To avoid dismissal, the complaint must plead "enough facts to state a claim to
27  relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
28  This plausibility standard requires sufficient factual allegations to allow "the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)). Legal conclusions couched as factual allegations are not given a presumption of truthfulness. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

**III.  Analysis.**

    **A.  First American.**

The following claims are pending against First American: abuse of process (Count I), insurance bad faith (Count II), breach of contract (Count III), and tortious interference with contract (Count IV). First American seeks dismissal of all four claims against it. Doc. 38. The Court will consider each claim in turn.

        **1.  Abuse of Process (Count I).**

GRK alleges that First American abused process by "caus[ing] the filing of Sham Litigation against GRK" in Superior Court. Doc. 21 at 10. First American argues that GRK's allegations are insufficient to state a claim for abuse of process. The Court agrees.

Unlike the tort of malicious prosecution, which covers the initiation of civil proceedings "without probable cause" and "motivated by malice," abuse of process addresses misuse of process after proceedings have been initiated. *Joseph v. Markowitz*, 551 P.2d 571, 574-75 (Ariz. App. 1976). In Arizona, the elements of an abuse of process claim are "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. App. 2004) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. App. 1982)).

First American argues that GRK's complaint fails to plead the necessary elements of abuse of process because it alleges only that the lawsuit was filed for an improper purpose. GRK replies that "alleg[ing] a specific act which showed abuse . . . is not required when the plaintiff alleges process used for the ulterior motive and primary purpose of subjecting the opposing party to excessive legal fees and expenses." Doc. 45 at 5. GRK argues that the

1   "Sham Litigation was brought by the Defendants for an improper purpose," (*id.*), but does
2   not identify which of First American's acts of using the process were tortious.

3   Arizona law requires that a "willful act in the use of judicial process" be alleged in an
4   abuse of process claim. *Crackel*, 92 P.3d at 887; *Nienstedt*, 651 P.2d at 881. A "generalized
5   allegation that a defendant has misused the litigation process as a whole" cannot support a
6   claim of abuse of process. *Id.* at 888. The claim must be based on something more than the
7   opposing party's "mere persistence in the litigation." *Id.* As the Arizona Court of Appeals
8   has explained, the tort of abuse of process, unlike the tort of malicious prosecution, requires
9   "some act beyond the initiation of a lawsuit." *Joseph*, 551 P.2d at 574-75.

10  GRK cites no Arizona case that purports to overrule *Joseph*, and this Court has found
11  none. As a result, Arizona law still holds that GRK may not base its abuse of process claim
12  on the mere initiation of the Superior Court litigation. Some specific abuse of the litigation
13  process must be alleged. GRK has not pled such specific abuse, and the Court accordingly
14  will grant First American's motion to dismiss the claim. The Court need not decide whether
15  GRK alleged sufficient facts to plead improper purpose on the part of First American.

**2.      Insurance Bad Faith (Count II).**

17  GRK alleges that First American owed it a duty of good faith and fair dealing based
18  on the lender's insurance policy. Doc. 21 at 12. GRK contends that First American breached
19  this duty by causing the filing of the Superior Court litigation, which would deprive GRK of
20  its rights to the 58 properties. *Id.*

21  The tort of insurance bad faith arises when, *inter alia*, "the insurance company
22  intentionally denies, fails to process or pay a claim without a reasonable basis for such
23  action." *Noble v. National Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981); *see Golden*
24  *Rule Ins. Co. v. Montgomery*, 435 F. Supp. 2d 980, 995 (D. Ariz. 2006). "The tort consists
25  of two elements. The insured must show that: (1) the insurer acted *unreasonably* in its
26  handling of the insured's claim; and (2) that the insurer acted *knowing* that it was acting
27  unreasonably or *with such reckless disregard* that knowledge may be imputed to it." *Id.*
28  (emphasis in original). First American argues that GRK's claim is defective because it is

1  based on First American's filing of the litigation in Superior Court, not on its failure to
2  "process or pay a claim[.]" *Noble*, 624 P.2d at 868.  First American asserts – and GRK does
3  not deny – that GRK has never made a claim under the First American lenders' policy, and
4  that GRK therefore has not alleged that First American "acted unreasonably in its handling"
5  of any claim.  Doc. 38 at 11.

6        GRK argues that "[alt]hough many cases litigated do revolve around a submitted
7  claim, careful reading of the case law shows that it is the conduct of the insurer toward the
8  insured's interests that [is] the catalyst for the claim."  Doc. 45 at 11.  GRK cites three
9  Arizona cases: *Rawlings v. Apodaca*, 726 P.2d 565, 576 (Ariz. 1986); *Noble*, 624 P.2d at
10 868; and *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 735 P.2d 125, 134 (Ariz. App. 1986).
11 The Court agrees that *Rawlings* supports GRK's position.

12       The Rawlings were insured by Farmers Insurance Company of Arizona for losses
13 caused by fire.  The policy limit was $10,000.  When the Rawlings' barn was burned due to
14 the negligence of their neighbors, the Apodacas, Farmers paid the Rawlings the $10,000
15 owed under the policy.  This payment did not cover all of the Rawlings' losses.

16       Farmers had also insured the Apodacas.  That policy included $100,000 of liability
17 coverage – money that could be called upon to pay the Rawlings' uninsured losses if the
18 Apodacas in fact caused the fire.  An investigator hired by Farmers concluded that the
19 Apodacas caused the fire.  When the Rawlings sought to obtain a copy of the investigator's
20 report, Farmers blocked their effort and thereby impeded their ability to bring a claim against
21 the Apodacas that Farmers ultimately would pay.

22       On appeal from a judgment in favor of the Rawlings, Farmers made the same
23 argument that First American makes here – "that actionable bad faith by an insurer facing a
24 first-party claim is limited to the unfounded refusal or delay in payment of a valid claim."
25 726 P. 2d at 569 (footnote omitted).  Because it had paid the Rawlings the $10,000 it owed
26 under their insurance policy, Farmers argued that it could not be liable.  The Rawlings made
27 the argument asserted in this case by GRK – "that bad faith claims are not limited to
28 situations involving breach of the express promise to pay covered claims."  *Id*.

1    The Arizona Court of Appeals agreed with Farmers, holding "that because Farmers had paid the Rawlings' claim in full (the policy limits) and without delay, it could not be liable for the tort of bad faith." *Id*. The Arizona Supreme Court reversed. It held that Farmers breached the covenant of good faith and fair dealing implied in its insurance contract with the Rawlings when it blocked the Rawlings' access to the investigative report and thereby frustrated their efforts to bring a claim against the Apodacas. As the Supreme Court explained, "Farmers intentionally pursued a course of conduct designed, for its own benefits, to impede the [Rawlings] claim against the tortfeasor. Thus, although Farmers performed its express covenants, the evidence supports the conclusion that for its own profit Farmers breached its duty to play fairly with its insureds and to give their legitimate interests equal consideration." *Id*. at 573.

*Rawlings* thus holds that insurance bad faith is not limited to wrongful actions in the handling of a claim. Bad faith may occur under Arizona law when the insurance company takes other actions to defeat the insured's interest. Whether First American did so in this case will require further factual development, but the Court cannot hold at this stage that GRK has failed to state a claim for insurance bad faith.

### 3. Breach of Contract (Count III).

GRK alleges that First American's insurance policy, "through the elements of good faith and fair dealing," contained an implicit promise that First American "would recognize and disclose GRK's Deed of Trust to subsequent interested parties[.]" Doc. 21 at 15. GRK alleges that First American breached this implied covenant by failing to disclose the deed of trust to Capital Title – the company that did the title searches on the properties. *Id.*

To prevail on a breach of contract claim, a plaintiff must prove the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff. *See Coleman v. Watts*, 87 F. Supp. 2d 944, 955 (D. Ariz. 1998) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 387 P.2d 235, 237 (Ariz. 1963)). First American argues that GRK has failed to allege a breach because "there is no provision in the policy requiring First American to make disclosure to anyone of GRK's deed

- 8 -

1  of trust." Doc. 38 at 10. GRK alleges that First American breached the covenant of good
2  faith and fair dealing implied in any contract, which mandates that "neither party will act to
3  impair the right of the other to receive the benefits which flow from their agreement or
4  contractual relationship." *Rawlings*, 726 P.2d at 569.

5  GRK's claim is premised on First American's failure to perform an affirmative act –
6  to disclose GRK's deed of trust to Capital Title. This is not the same as the insurance bad
7  faith claim discussed above – a claim premised on First American's filing of the Superior
8  Court litigation. Under Arizona law, however, the "implied covenant in an insurance
9  contract [does not] entitle[] the insured . . . to protection in excess of that which is provided
10 for in the contract, nor to anything inconsistent with the limitations contained in the
11 contract." *Id*. at 571. Moreover, insurance companies have not been deemed by law as full
12 fiduciaries. *Id.* at 571 ("we do not go so far as to hold that the insurer is a fiduciary").

13 GRK does not claim that its contract with First American required First American to
14 notify others about GRK's rights under the deed of trust. Nor has GRK cited any case
15 recognizing an implied contractual obligation for an insurer of a deed of trust to notify buyers
16 of the property that the deed of trust exists. Because such an obligation clearly would exceed
17 the protection provided in the lenders' insurance policy, it is not implied under Arizona law.
18 GRK therefore has failed to state a claim for breach of contract in Count III.

19 **4.  Tortious Interference With Contract (Count IV).**

20 Under Arizona law, a plaintiff asserting a claim of tortious interference with
21 contractual relations must prove: "(1) existence of a valid contractual relationship,
22 (2) knowledge of the relationship on the part of the interferor, (3) intentional interference
23 inducing or causing a breach, (4) resultant damage to the party whose relationship has been
24 disrupted, and (5) that the defendant acted improperly." *Safeway Ins. Co. v. Guerrero*, 106
25 P.3d 1020, 1025 (Ariz. 2005) (quoting *Wells Fargo Bank v. Ariz. Laborers, Teamsters &*
26 *Cement Masons Local No. 395 Pension Trust*, 38 P.3d 12, 31 (Ariz. 2002)).

27 GRK alleges that it "had a valid contractual relationship and/or business expectancy
28 with Shamrock [Glen]" pursuant to the loan GRK made to Shamrock Glen. Doc. 21 at 16.

1 GRK further alleges that First American "had knowledge" of the loan and failed to recognize 2 GRK's lien when it filed the litigation in Superior Court. *Id.* GRK argues that First 3 American intentionally interfered with GRK's contract with Shamrock Glen by filing the 4 litigation under these facts.

5 First American claims that "GRK's tortious interference claim fails as a matter of law 6 because other factual allegations in the Complaint clearly show that GRK has not pled the 7 first element of the tort – that it had a *valid* contractual relationship at the time of the 8 interference." Doc. 38 at 9 (emphasis in original). First American contends that the 9 complaint clearly alleges that Shamrock Glen breached the contract on October 31, 2006, 10 more than one year before First American filed the Superior Court litigation. First American 11 argues that because Shamrock Glen had already breached the contract at the time the lawsuit 12 was filed, First American cannot have interfered with a valid contract. First American has 13 cited no case law for the proposition that once a contract has been breached with respect to 14 one provision it is deemed invalid or unenforceable with regard to all provisions. Moreover, 15 the Court must interpret the facts in a light most favorable to the nonmoving party for the 16 purposes of this motion. GRK has alleged that there was a valid contract, and nothing in 17 GRK's complaint establishes that the aspect of the contract with which First American is 18 alleged to have interfered was invalid or unenforceable.

19 First American also argues that the filing of the lawsuit is privileged and cannot form 20 the basis for tortious interference. This proposition is not supported by Arizona law. 21 Arizona recognizes the tort of malicious prosecution, whereby a plaintiff can be held liable 22 for instituting civil proceedings against a defendant if it commenced a suit without probable 23 cause, motivated by malice, and ended up losing the suit. *Joseph*, 551 P.2d at 573. The 24 recognition of this tort is sufficient to show that filing a lawsuit is not *per se* privileged.

25 First American cites *Western Technologies v. Sverdrup & Parcel, Inc.*, 739 P.2d 1318, 26 1323 (Ariz. App. 1986), and *Green Acres Trust v. London*, 688 P.2d 617 (Ariz. 1984), in 27 support of its privilege argument. *Western Technologies* recognized "an absolute privilege 28 or immunity to statements made in judicial and quasi-judicial proceedings." 739 P.2d at

- 10 -

1324. The court did not consider the question of whether the filing of a lawsuit – rather than a statement made in a judicial proceeding – is privileged. Likewise, *Green Acres* did not concern privilege for the filing of a lawsuit, but privilege for statements made during the course of judicial and quasi-judicial proceedings. The court noted that the "privilege protects judges, parties, lawyers, witnesses and jurors" from statements made in the course of the proceedings. 688 P.2d at 613.[2] Neither case holds that filing of a lawsuit is privileged.

An additional question is whether the interference was proper. *Safeway*, 106 P.3d at 1025; *Wagenseller v. Scottsdale Memorial Hosp.*, 710 P.2d 1025, 1043 (Ariz. 1985). GRK alleges that the lawsuit was improper, including its claim that the lawsuit breached the covenant of good faith and fair dealing. Because First American does not focus on the issue of whether its lawsuit was proper as a matter of law – beyond arguing that filing of a lawsuit is absolutely privileged, which the Court rejects – nor state additional reasons why the Court should dismiss this claim, the Court will deny First American's motion to dismiss the tortious interference claim.

### B. The Mariscal Defendants.

GRK has asserted claims against the Mariscal Defendants for abuse of process (Count I) and tortious interference with contract (Count IV).

#### 1. Abuse of Process (Count I).

GRK alleges that the Mariscal Defendants committed the tort of abuse of process by "caus[ing] the filing of Sham Litigation against GRK" in order "to leverage and harass GRK into abandoning, or releasing for trivial compensation," GRK's liens against the properties. Doc. 21 at 10. The Mariscal Defendants argue that GRK has failed to allege any willful act

---

[2] In its reply brief, First American cites *Drummond v. Stahl*, 618 P.2d 616, 619 (Ariz. App. 1980), and *Yeung v. Zoran*, 232 P.3d 1281 (Ariz. App. 2010). These cases similarly deal only with statements made or actions taken during the course of litigation, not the filing of the litigation. *See Yeung*, 232 P.3d at 1282 (court noting that the case dealt with statements made "in connection with a private, contractual arbitration proceeding"); *Drummond*, 618 P.2d at 619 (court noting that an allegation that an attorney had a conflict of interest, made during litigation proceedings, is privileged).

- 11 -

beyond the filing of the Superior Court litigation – an insufficient allegation under Arizona law. *Crackel*, 92 P.3d at 888 (court finding that "a generalized allegation that a defendant has misused the litigation process as a whole" is insufficient). The Court agrees with the Mariscal Defendants and will dismiss the abuse of process claim for the reasons discussed above.

### 2. Tortious Interference With Contract (Count IV).

GRK alleges that the Mariscal Defendants tortiously interfered with its contract with Shamrock Glen by filing the Superior Court litigation that prevented GRK from foreclosing on the properties. Doc. 21 at 16. The Mariscal Defendants make arguments identical to First American's – GRK has failed to show a valid contractual relationship, and filing of the Superior Court litigation was privileged. Doc. 39 at 8. The Court will deny the motion to dismiss the tortious interference claim for the reasons discussed above.[3]

## C. The Quarles Defendants.

GRK sues the Quarles Defendants for abuse of process (Count I) and tortious interference with contract (Count IV).

### 1. Abuse of Process (Count I).

GRK alleges that the Quarles Defendants committed the tort of abuse of process by "caus[ing] the filing of Sham Litigation against GRK" in order "to leverage and harass GRK into abandoning, or releasing for trivial compensation," GRK's liens against the properties. Doc. 21 at 10. The Quarles Defendants, like the other Defendants, argue that GRK has failed to allege any willful act beyond the filing of the litigation – an insufficient allegation under Arizona law. *Crackel*, 92 P.3d at 888 (court finding that "a generalized allegation that a defendant has misused the litigation process as a whole" is insufficient). For reasons

---

[3] In their reply brief, the Mariscal Defendants argue that GRK failed to plead the third element of a tortious interference claim – that the intentional interference induced or caused a breach. Doc. 48 at 8. They also argue that "GRK cannot collaterally attack" other rulings "through the guise of a tortious interference claim." *Id.* The Court will not consider arguments made for the first time in a reply brief.

- 12 -

1  explained above, the Court agrees that GRK has failed to state a claim for abuse of process
2  and will dismiss this claim against the Quarles Defendants.

### 2. Tortious Interference With Contract (Count IV).

GRK alleges that the Quarles Defendants tortiously interfered with its contract with Shamrock Glen by filing the Superior Court litigation that prevented GRK from foreclosing on the properties. Doc. 21 at 16. The Quarles Defendants make the same two arguments as the other Defendants – which the Court rejected above – and one additional argument.[4] Defendants argue that "GRK's allegations pled in the [complaint] in support of the tortious interference claim do not meet the plausibility requirements of Rule 8." Doc. 33 at 8. They argue that "GRK has pled no facts showing that the [Superior Court litigation] is something other than what it appears to be – a litigated dispute as to whether GRK has [the] right to foreclose on its deed of trust." *Id.* They contend that there are absolutely no facts in support of GRK's conclusory assertions that the Quarles Defendants acted with improper intent and filed suit to interfere with GRK's contract. The Court agrees.

GRK alleges that the Quarles Defendants filed suit with improper motives (Doc. 21 at 16), but alleges no facts that allow "the court to draw the reasonable inference that the [Quarles Defendants] [are] liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Indeed, the following are the only factual statements in the complaint that even mention the Quarles Defendants: "Defendant Quarles & Brady . . . is a foreign limited liability partnership" (Doc. 21 at 3), "Defendant John Maston O'Neal . . . is an Arizona resident" and "an attorney" with Quarles & Brady (*id.*), "Defendant Lauren Elliott Stine . . . is an Arizona resident" and "an attorney" with Quarles & Brady (*id.*), and the fact that Quarles Defendants filed the Superior Court litigation (*id.* at 8).

In its response to Quarles Defendants' motion to dismiss, GRK states that "[w]hen

---

[4] In their reply brief, the Quarles Defendants make yet a fourth argument that GRK has failed to plead the third element of a tortious interference claim – that the intentional interference induced or caused a breach. Doc. 44 at 6. The Court will not consider this untimely argument.

- 13 -

1  GRK tried to foreclose, Defendants stepped in and filed a lawsuit to stop them." Doc. 41 at
2  6. GRK also points to paragraph 90 of its complaint, where it alleges that "Defendants'
3  interference was improper as to motive and/or means." *Id*. at 7; Doc. 21 ¶ 90. But the mere
4  allegation that interference was improper is a legal conclusion, not a statement of fact. Legal
5  conclusions couched as factual allegations are not given a presumption of truthfulness.
6  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). *Iqbal* requires a plaintiff's complaint
7  to state sufficient factual allegations to allow "the court to draw the reasonable inference that
8  the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949
9  (2009). GRK pleads no facts that allow the Court to draw the inference that the Quarles
10 Defendants filed the Superior Court litigation with any improper intent. *Safeway*, 106 P.3d
11 at 1025 (noting that, while attorneys do not have a qualified privilege with regard to civil
12 suits, they can be held liable only if they "acted improperly"). As a result, the Court must
13 dismiss the claim against the Quarles Defendants.

**IV.     Leave of Amend.**

GRK, in a single sentence, asks that the Court grant leave to amend in the event any of GRK's claims are dismissed. Doc. 45 at 13. GRK has already had three opportunities to plead its claims. *See* Docs. 1, 11, 21. GRK has also been slow in getting this litigation started: Defendants were not served until some six months after this case was commenced. *See* Doc. 20. Because leave to amend should be freely granted under Rule 15, and the Supreme Court has instructed that "this mandate is to be heeded," *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Court will grant GRK one more opportunity to amend. GRK has until **October 22, 2010**, to file an amended complaint. Given the number of times GRK has amended its complaint and the time that has elapsed since the commencement of this litigation, GRK is cautioned that this deadline will not be extended absent truly extraordinary circumstances. Defendants also are advised that the time for them to answer or otherwise respond to the complaint will not be extended absent truly extraordinary circumstances.

**IT IS ORDERED:**

1.      First American's motion to dismiss (Doc. 38) is **granted in part and denied**

1 **in part**.  The Court will grant First American's motion to dismiss the abuse of process claim (Count I) and deny the motion as to the other claims (Counts II, III, and IV).

2. The Mariscal Defendants' motion to dismiss (Doc. 39) is **granted in part and denied in part**.  The Court will dismiss the abuse of process claim (Count I) and deny the motion with respect to the tortious interference claim (Count IV).

3. The Quarles Defendants' motion to dismiss (Doc. 33) is **granted**.

4. GRK will have until **October 22, 2010** to file a third amended complaint.

DATED this 6th day of October, 2010.

David G. Campbell
United States District Judge