**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GRK Holdings, LLC,<br><br>Plaintiff,<br><br>v.<br><br>First American Title Insurance Co., et al.,<br><br>Defendants. | No. CV10-0050-PHX-DGC<br><br>**ORDER** |

Defendants Capital Title Agency ("CTA") and Security Title Agency ("STA") filed a motion for partial summary judgment. Doc. 131. Plaintiff, GRK Holding, LLC ("GRK") filed a response. Doc. 141. GRK also filed a motion for summary judgment against Defendant STA. Doc. 132. This motion has been fully briefed. Docs. 142, 147. Defendant STA also filed, as part of its response to GRK's motion, a cross motion for summary judgment (Doc. 142), and GRK filed a response. Doc. 147. No party has requested oral arguments. For the reasons that follow, the Court will grant in part and deny as moot in part CTA's and STA's motion for partial summary judgment (Doc. 131), deny GRK's motion for summary judgment against STA (Doc. 132), and deny STA's cross motion for summary judgment. Doc. 142.

**I.  Background.**

The facts alleged in GRK's third amended complaint are as follows: On

August 23, 2006, GRK made a short-term loan to Shamrock Glenn, LLC ("Shamrock") of $270,000 with a guaranteed return of $340,000, and the loan was secured by a deed of trust prepared by Defendant CTA. Doc. 52 at 3-4. The deed of trust covered a development project comprising 58 properties ("Shamrock Project"). *Id.* at 4. Shamrock failed to pay off its loan by the maturity date of October 31, 2006. *Id.* at 4. Sometime after CTA recorded GRK's deed, Shamrock sold several of the properties, and buyers received title insurance policies from Defendants STA and First American Title Insurance Company ("FATCO"). *Id.* at 5. Subsequent to preparing and recording GRK's deed, CTA prepared title reports on behalf of STA and FATCO that obscured GRK's security interest from the homebuyers. *Id.* STA and FATCO also did not disclose the Shamrock Project sales to GRK or inform the homebuyers of GRK's interests in their properties. *Id.*

After its default, Shamrock tried to obtain funds from another lender and negotiated a proposed settlement in which Shamrock would pay $300,000 to GRK in exchange for a full release of the deed of trust. *Id.* at 5-6. GRK executed the full release, but Shamrock abandoned the settlement and the full release was not recorded. *Id.* at 6. Shamrock then proposed a new settlement in which would pay $200,000 and transfer title to one of its units to GRK in exchange for a partial release and partial reconveyance of the deed of trust. *Id.* at 6-7. The partial release covered 16 units, with GRK retaining a security interest in the remaining 42 units. *Id.* STA acted as the escrow agent for this transaction and recorded the partial release on July 6, 2007. *Id.* at 6, 7. On August 9, 2007, STA also erroneously recorded the full release of all 58 units. *Id.* On November 8, 2007, STA corrected the record with "Affidavits of Erroneous Recording." *Id.* at 7-8.

Shamrock defaulted on its payments under the new settlement, and in October of 2007 GRK ordered a trustee sale to foreclose on its remaining interest in 42 units. *Id.* at 7. In response, FATCO secured counsel ("the Mariscal Defendants") to file a quiet title action in Maricopa County Superior Court on behalf of its insured property owners

whose units would be affected by the attempted foreclosure. *Id.* at 8. FATCO's counsel argued that GRK's deed of trust was invalid even though they knew that the full release was erroneous. *Id.* STA also secured counsel ("the Quarles Defendants") to initiate a quiet title action on behalf of its insured homeowners, also despite having notice that the full release by GRK was erroneous. *Id.* at 9. The superior court consolidated the two actions. *Id.* at 10.

In the consolidated action ("State Court Litigation"), the Mariscal and Quarles Defendants, acting on behalf of FATCO and STA, argued for and obtained a temporary restraining order against GRK's trustee sale. *Id.* at 11-12. Plaintiffs allege that Defendants engaged in the above conduct in order to harass Plaintiff, deprive it of its contractual rights to foreclosure, and deter it from effectuating its legal rights by "driv[ing] up legal costs needlessly" – the latter being the "primary purpose" of the quiet title action. *Id.* at 10-11, 13. Plaintiffs also allege that Defendants used the judicial process, including the TRO request and an evidentiary hearing, for allegedly improper purposes. *Id.* at 13.

**II.    Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must

be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Analysis.**

   **A. Capital Title and Security Title.**

GRK's third amended complaint alleges two counts against both CTA and STA: abuse of process (Count I) and tortious interference with contract (Count II), and two additional counts against STA: promissory estoppel (Count IV) and breach of contract (Count IV). Doc. 52. Both CTA and STA seek summary judgment on the tortious interference claim, and CTA seeks summary judgment on the abuse of process claim. Doc. 131 at 1-2.

   **1. Tortious Interference with Contract (Count II).**

Under Arizona law, a plaintiff asserting a claim of tortious interference with contractual relations must prove: "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2005) (quoting *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust*, 38 P.3d 12, 31 (Ariz. 2002)).

CTA and STA argue that GRK's tortious interference claim fails as a matter of law because there is no causal relationship between their alleged conduct and Shamrock's breach of contract with GRK. Doc. 131 at 4. In an earlier order granting the Quarles Defendants' motion to dismiss on this same count, this Court noted that GRK cited two cases for the proposition that preventing foreclosure constitutes tortious interference with a contract where it frustrates a party's contractual expectations. Doc. 50 at 10. The Court found that "neither case holds that a party can be liable for interfering with a contract when the contract is not breached as a result of the alleged interference, and

Plaintiff does not explain how Defendants' filing of the state court lawsuit interfered with some prospective economic advantage GRK expected to receive from Shamrock." *Id.* CTA and STA request that the Court grant summary judgment in their favor for the same reason. In its reply, GRK states that it "continues to assert that a claim of tortious interference with a contract was properly alleged," but it cites no additional cases to support its claim that interference with foreclosure constitutes tortious interference with a contract that already has been breached. Doc. 141 at 2-3. GRK states that it is not aware of any intervening authority that would cause the Court to call into question its prior ruling, and that it will simply rely "on the facts already plead." Doc. 141 at 3. For the reasons stated in the Court's ruling on the Quarles motion to dismiss, the Court holds that GRK has failed to establish the causation element of tortious interference. The Court will grant summary judgment in favor of Defendants.

### 2. Abuse of Process (Count I).

Defendants ask the Court to grant summary judgment in favor of CTA on the abuse of process claim because CTA did not participate in or fund the state litigation at issue. Doc. 131 at 4. As GRK notes in its reply, the parties have already settled this claim and stipulated to a dismissal which the Court granted. Doc. 141 at 3; *see* Docs. 140, 144. The Court will deny Defendants' motion for summary judgment on behalf of CTA as moot.

## B. GRK's Motion for Summary Judgment.

GRK seeks summary judgment against STA on its claims of breach of contract (Count V) and promissory estoppel (Count IV). Doc. 132 at 1. GRK bases these claims on STA's alleged failure to abide by a contractual agreement as GRK's escrow officer not to record the full release of its deed of trust until directed to do so by GRK. *Id.* at 3.

### 1. Breach of Contract.

To prevail on a breach of contract claim, a plaintiff must prove the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant,

and resulting damage to the plaintiff. *See Coleman v. Watts*, 87 F. Supp. 2d 944, 955 (D. Ariz. 1998) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 387 P.2d 235, 237 (Ariz.1963)). The Court will address whether GRK has shown each of these elements on the basis of undisputed facts and is therefore entitled to judgment as a matter of law.

### a. **Existence of Contract.**

GRK argues, and STA does not dispute, that it had a contract with STA in the form of its "Insured Closing Letter," which states in full:

> The Deed of Release dated June 8, 2007 pursuant to the Deed of Trust executed by Shamrock Glen, LLC an Arizona Limited Liability Company as Trustor to GRK Holdings, LLC a Nevada Limited Liability Company as Beneficiary, dated August 3, 2006 and recorded August 30, 2006 in Document No. 20061153548 in the office of the County Recorder of Maricopa County, AZ, *is only to be recorded upon receipt of written instructions form* (sic) *Gregory Krolikowski, Managing Member of GRK Holdings, LLC.* (Underlining in original, emphasis added).

Doc. 132 at 3 (citing Doc. 133-2); *see also* Doc. 133, Pl.'s SOF, ¶ 1.

### b. **Breach by Defendant.**

GRK also argues, and STA does not dispute, that STA breached the agreement by recording the deed release on August 9, 2007, without instructions to do so from GRK managing member Gregory Krolikowski. Doc. 132 at 3, Doc. 133, Pl.'s SOF, ¶ 6; *see also* Doc. 133-3, Aff. of Greg Krolikowski.

### c. **Damage to Plaintiff.**

GRK argues that it incurred damages as a result of this breach. Doc. 132 at 3, 5. Specifically, GRK states that the sales of two properties, units 122 and 119, closed after STA's erroneous recording of the deed release and before its November 8, 2011, reinstatement, accounting for nearly $300,000 in payments that could have been used to pay GRK's lien. *Id.*, Doc. 133 ¶ 11. Additionally, GRK argues that the state court litigation was initiated on the basis of the faulty deed release, resulting in GRK bearing the cost of defending against the state court action. Docs. 132 at 5, 133 ¶ 11. GRK

argues that both the unit sales and the state litigation were foreseeable results of STA's erroneous recording of the deed release. Doc. 132 at 5.

STA agrees, as a matter of law, that "[a]n escrow agent which fails to follow the escrow instructions breaches its contract, and the parties to the escrow may recover 'all damages resulting from any deviation' from the escrow instructions." Doc. 142 at 4. (quoting *Burkons v. Ticor Title Ins. Co. of California*, 168 Ariz. 345, 352, 813 P.2d 710, 717 (1991)). STA disputes, however, that GRK incurred any damages from its temporary erroneous recording of the deed release. Doc. *Id.* at 2, 4.

STA argues that whether GRK's deed of trust was on record at the time of the two unit sales at issue is of no consequence because GRK's deed was junior to two other deeds on both properties. *Id.* at 2. With respect to Unit 119, STA argues that there were more than $912,500 in secured obligations on the property that had priority over GRK's deed and, because the property sold for $155,000, GRK would not have been entitled to payment even if its deed had been on record; therefore it could not have incurred damages. *Id.* at 3-4. With respect to Unit 122, STA argues that this property was included in a settlement agreement in which GRK received $250,000 after it initiated, and the court enjoined, its trustee sale; therefore GRK has already been compensated for its injury and cannot recover again under Arizona law. *Id.* at 3, 5.

GRK does not dispute that it was a junior lien-holder on units 119 and 122 and would not have received any compensation in the event of foreclosure. GRK argues in its reply, however, that STA's argument that it incurred no damages is flawed because the properties at issue were not foreclosed upon, but sold. Doc. 147 at 4. GRK states that although junior liens are wiped out when those senior in priority take all the proceeds in a foreclosure, this does not happen in a sale, and it argues that in this case it "easily would have been able to negotiate cash for clearing the titles of these properties." *Id.* With respect to the settlement covering unit 122, GRK also argues that it lost its best opportunity to receive compensation for release of the lien at the time of sale and that it

was induced to accept a settlement at the time of the lawsuit enjoining its foreclosure on the basis that its lien had been erroneously released. *Id.* GRK also argues that STA fails to address its argument that it incurred damages in having to defend a quiet title action based on STA's erroneous recording of the deed release. Doc. 147 at 6.

The Court concludes that GRK's damages claim involves a genuine dispute of material facts. GRK's claims that the $300,000 generated from the sales of units 119 and 122 could have been used to clear title on those properties but for STA's erroneous recording is based not on undisputed facts, but on GRK's unsubstantiated assertion that it previously negotiated lien releases associated with other Shamrock Glen sales and could therefore have done so in this case. *See id.* at 4. GRK does not cite to any undisputed facts as a basis to assert that the $200,000 settlement it received in relation to unit 122 is less than it could have received if it had negotiated a lien release at the time the property was sold. *Id.*

Although GRK is correct that STA does not respond to its argument that GRK incurred costs associated with defending its deed due to STA's erroneous recording, STA rejected GRK's statement to this effect in its statement of facts. *See* Docs 133, PSOF, ¶ 12, Doc. 143 at 3, #12 (citing Security Title, DSOF, ¶¶ 1, 8, 9, 10). GRK's citations to an affidavit from Greg Krolikowski and to FATCO's statement of facts (*see* Doc. 133 ¶ 12, Doc. 147 at 6) also do not support GRK's allegation that the State Court Litigation was carried out on the basis of STA's false recording. Krokikowski's affidavit does not mention the State Court Litigation (*see* Doc. 133, Exh. 3), and GRK's specific citation to FATCO's statement of facts indicates only that the suit to enjoin GRK's foreclosure contained a disclosure of STA's erroneous filing. *See* Doc. 130 ¶ 20. Whether and to what extent STA's recording error played a role in GRK having to defend its foreclosure action is an issue subject to genuine factual dispute. The Court will deny GRK's motion for summary judgment on this claim.

### 2. Promissory Estoppel.

GRK requests summary judgment on a claim of promissory estoppel related to the same agreement at issue in its breach of contract claim. Doc. 132 at 4. GRK cites to the Restatement (Second) of Contracts § 90(1), claiming that "to prove promissory estoppel, a plaintiff must show that the defendant made a promise and should have reasonably foreseen that the plaintiff would rely on that promise, and further that the plaintiff did in fact rely on that promise." *Id.* The Restatement also requires that enforcement of the promise be necessary to prevent injustice. *See* Restatement (Second) of Contracts § 90. As stated above, the issue of whether GRK incurred damages and would therefore suffer an injustice from STA's failure to keep its promise is in dispute. The Court will deny summary judgment on this claim.

### C. Security Title's Cross Motion for Summary Judgment.

Along with its response to GRK's motion for summary judgment, STA included a cross motion for summary judgment on GRK's breach of contract and promissory estoppel claims. Doc. 142 at 5-6. STA relies on the same arguments it made in response to GRK's motion: that GRK sustained no damages from the erroneous recording of its deed release and is therefore not entitled to summary judgment on these claims as a matter of law. The Court determined that the damages claim presents genuine issues of material fact. The Court will deny summary judgment to STA on these claims.

**IT IS ORDERED:**

1. Defendants Capital Title Agency's and Security Title Agency's motion for partial summary judgment (Doc. 131) is **granted in part** and **denied** as moot **in part**, as set forth in this order.

2. Plaintiff GRK Holding, LLC's motion for summary judgment against Security Title Agency (Doc. 132) is **denied**.

3. Defendant Security Title Agency's cross motion for summary judgment (Doc. 142) is **denied**.

4. The Court will set a final pretrial conference by separate order.

Dated this 13th day of December, 2011.

_David G. Campbell_
David G. Campbell
United States District Judge